UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| RICHARD P. BAXTER and | ) | Case No. 08-49029-705 |
| CLARE S. BAXTER, | ) | |
| | ) | |
| Debtors. | ) | Chapter 7 |
| | ) | |
| OLD REPUBLIC NATIONAL TITLE | ) | |
| INSURANCE COMPANY and | ) | |
| OLD REPUBLIC TITLE COMPANY | ) | |
| OF ST. LOUIS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No. 09-04225-399 |
| | ) | |
| RICHARD P. BAXTER and | ) | |
| CLARE S. BAXTER, | ) | **NOT FOR PUBLICATION** |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This matter comes before this Court on the Third Amended Adversary Complaint filed by Plaintiffs, Old Republic National Title Insurance Company and Old Republic Title Company of St. Louis, Inc. (separately or together, "Old Republic"). The Third Amended Adversary Complaint alleges causes of action against Defendants, Richard P. Baxter and Clare S. Baxter (together, the "Baxters"), seeking to hold debt in the amount of $61,800.00 owed by the Baxters non-dischargeable pursuant to sections 523(a)(2)(A) and (a)(2)(B) of title 11 of the United States Code (the "Bankruptcy Code"). On August 2, 2010, the Third Amended Adversary Complaint came before this Court for trial. Old Republic and the Baxters appeared through counsel. This Court makes the following findings of fact and conclusions of law.

-1-

**BACKGROUND**

Old Republic brings this cause of action based on a refinancing transaction whereby Wells Fargo Bank, N.A. ("Wells Fargo") extended a home equity line of credit to the Baxters and an existing home equity line of credit extended by Countrywide Home Loans, Inc.[1] was to be paid off.

The Baxters owned property known as 1010 St. Charles Street, Apartment 1102, St. Louis, Missouri (the "Property"). The Baxters's ownership in the Property was subject to a lien held by Countrywide that secured indebtedness on a home equity loan.

In 2005, the Baxters intended to refinance the Countrywide loan to allow Mrs. Baxter to obtain funds for the operation of her real estate business. At the time of trial, Mrs. Baxter had her own realty company and she had been a licensed real estate broker for at least fifteen years. She also obtained extensive experience in the "corporate world" prior to becoming a broker. Mr. Baxter is a civil engineer.

Wells Fargo agreed to be the new lender for the refinance of the Baxters' mortgage. Old Republic acted as the title insurer for Wells Fargo. Proceeds of the Wells Fargo loan were intended to payoff the Countrywide loan and Wells Fargo was insured by Old Republic to be the senior lienholder as Countrywide's lien was released.

At the time of the closing of the Wells Fargo loan on February 23, 2005, approximately $105,000 was owed to Countrywide on the line of credit that its lien secured. The Baxters testified that they intended to borrow from Wells Fargo $144,500; enough money to pay off the Countrywide home equity loan with Countrywide's lien

---

[1] Now known as BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A. ("Countrywide").

being released, and still have approximately $39,500 left to use toward Mrs. Baxter's business. They envisioned leaving the closing with a check for $39,500, the funds to use for Mrs. Baxter's business. The Baxters signed a deed of trust on the Property in favor of Wells Fargo securing a loan for the principal amount of $144,500. Due to an error, only approximately $64,000 was drawn from Wells Fargo at the closing. Accordingly, Countrywide's lien was not released. In addition, the Baxters did not leave the closing holding any funds for Mrs. Baxter's business.

The Baxters signed a Payoff Information Agreement and HUD-1 settlement statements at the closing. The Payoff Information Agreement required the Baxters to state that they would be responsible for any shortage in the payoff of the Countrywide loan. They also agreed to terminate the existing Countrywide home equity line of credit. Both HUD-1 settlement statements indicated that only approximately $64,000 of the funds available from the Wells Fargo loan were advanced at closing. Mrs. Baxter claimed that she did not review the HUD-1 settlement statements or the Payoff Information Agreement before signing them. She contended that one of the settlement statements was modified by hand after she signed it. However, a representative from Old Republic testified that the modifications to the statement were made at the closing. Mr. Baxter did not remember signing the Payoff Information Agreement, but he acknowledged his signature on it.

In late April of 2005, Old Republic learned that the $64,000 from the Wells Fargo loan had been improperly applied to a different Countrywide loan for a separate property owned by the Baxters. Old Republic worked with Countrywide to ensure that the loan proceeds, minus a fee from Countrywide, were applied to the correct

Case 09-04225    Doc 113    Filed 08/31/10    Entered 08/31/10 15:42:21    Main Document
Pg 4 of 15

Countrywide loan. After application of approximately $63,000 to the correct Countrywide loan, approximately $43,000 still remained due from the Baxters to Countrywide.

Mrs. Baxter testified that when she discovered the errors in the payoff calculation and the application of the Wells Fargo funds, she immediately made calls to Old Republic, Wells Fargo and Countrywide, and then she ultimately hired a private attorney to help her rectify the situation.[2] The Baxters agreed to pay the balance due Countrywide (approximately $43,000) from their Wells Fargo home equity loan.

Even though the Baxters appear to have made payments on the Countrywide line of credit, the full amount owed was never paid in full. Countrywide sent statements showing a credit limit in excess of $100,000 with a balance of approximately $43,000 and over $60,000 in credit available. The Baxters took no action to inform Countrywide of the error. Rather, Mrs. Baxter instructed Mr. Baxter to call Countrywide to "make sure" it was okay for them to continue to use the line of credit. She testified that she didn't know that they should cease making draws on the Countrywide line of credit. However, the parties' joint stipulation of facts includes a statement that the Baxters agreed to pay the shortage to Countrywide from their Wells Fargo home equity loan.

Mr. Baxter testified that when he contacted Countrywide to ask if there were still funds available for the Baxters's use, he did not mention to Countrywide the errors regarding the calculation of the payoff amount, the existence of the Wells Fargo loan or

---

[2]Mrs. Baxter was attentive to detail in situations where it worked to her advantage. In September of 2005, she worked with Wells Fargo to obtain reimbursement for some expenses that she incurred due to the error with the refinancing.

-4-

Case 09-04225   Doc 113   Filed 08/31/10   Entered 08/31/10 15:42:21   Main Document
Pg 5 of 15

the application of the Wells Fargo loan proceeds.

The Countrywide line of credit was in Mr. Baxter's name and he was the authorized signatory for it.  However, it is readily apparent that Mrs. Baxter was regularly involved with the draws from the loan after the Wells Fargo refinancing closing. Between March 13, 2006 and May 12, 2006, the Baxters wrote eight checks, drawing a total of $61,800 from the Countrywide line of credit.  Mr. Baxter's name is signed on each check, but it is clear that his name was signed by more than one person.  Between February of 2005 and February of 2007, the Baxters made payments on the Countrywide line of credit in excess of $15,000.  They testified that when they took the 2006 draws from Countrywide, they intended to repay the amounts they borrowed.

In addition to the $61,800 in draws on the Countrywide line of credit post-closing, the Baxters also obtained a significant amount of money from Wells Fargo on its line of credit post-closing.  The Baxters remained indebted on the Wells Fargo line of credit when they filed their voluntary petition for relief under Chapter 7 of the Bankruptcy Code on November 12, 2008.

## PROCEDURAL HISTORY

In the fall of 2009, Old Republic filed its complaint and first amended complaint, naming the Baxters and Countrywide Home Loans, Inc. as defendants.  Countrywide filed an answer to the amended complaint and a cross-claim against the Baxters.  After this Court granted in part and denied in part a motion to dismiss filed by the Baxters, Old Republic filed its second amended complaint.

In May of 2010, Old Republic filed its voluntary dismissal of all claims against

Countrywide. It also sought to amend the second amended complaint to reflect a settlement that it reached with Countrywide. The settlement required Old Republic to pay $100,000 to Countrywide. Countrywide assigned to Old Republic its home equity note and deed of trust on the Property and its cross-claim against the Baxters.

On May 21, 2010, Old Republic filed a Third Amended Adversary Complaint. The Third Amended Adversary Complaint requests a declaration that the Baxters are liable to Old Republic for the amount of $61,800 and that such amount is non-dischargeable. It also seeks a non-dischargeability judgment for $61,800 under Bankruptcy Code Section 523(a)(2)(A) based on: (1) Old Republic's obligation to establish Wells Fargo's first position as lienholder because of the Baxters' fraud; (2) and fraud alleged in the cause of action that Old Republic acquired from Countrywide. In addition, it includes a request for relief under Bankruptcy Code Section 523(a)(2)(B) based on the Baxters' alleged statements in the Payoff Information Agreement and the HUD-1 settlement statements.

From the Third Amended Adversary Complaint and the arguments made and evidence presented at trial, it is clear that Old Republic bases its fraud action on the draws made by the Baxters on the Countrywide line of credit in 2006 when they knew that: (1) the line of credit should have been terminated; and (2) Wells Fargo's lien should have a first priority position.

**DISCUSSION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1334(b), 157(b)(2)(I) and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I).

-6-

Exceptions to discharge are usually "narrowly construed against the creditor and liberally against the debtor, thus effectuating the fresh start policy of the Code." *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir.1987), *abrogated on other grounds*, *Grogan v. Garner*, 498 U.S. 279 (1991). "The Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an 'honest but unfortunate debtor.*" Cohen v. de la Cruz,* 523 U.S. 213, 217 (1998)(internal citation omitted).

**Bankruptcy Code Section 523(a)(2)(B)**

Because Old Republic failed to introduce any written evidence respecting the Baxters' financial condition it cannot succeed under section 523(a)(2)(B). Accordingly, the cause of action alleged in the Third Amended Adversary Complaint under section 523(a)(2)(B) is dismissed.

**Bankruptcy Code Section 523(a)(2)(A)**

Section 523(a)(2)(A) excepts certain debts from discharge. It provides, in pertinent part, that a discharge:

> does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. §523(a)(2)(A).

A creditor's success in a non-dischargeability action under Section 523(a)(2)(A) requires that creditor to prove, by a preponderance of the evidence, that: (1) the debtor made a false representation; (2) at the time the representation was made, the debtor knew it

was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor sustained loss and damage as a proximate result of the misrepresentation. *Field v. Mans,* 516 U.S. 59, 74 (1995)(justifiable reliance)*; Grogan*, 498 U.S. at 291 (burden of proof)*; The Merchants Nat'l Bank of Winona v. Moen (In re Moen),* 238 B.R. 785 (B.A.P. 8th Cir. 1999)(elements of proof under section 523(a)(2)(A))(citations omitted).

    The Baxters falsely represented that they were entitled or eligible to draw down on the Countrywide line of credit after the loan closing without informing Countrywide that the line of credit should have been closed or advising Wells Fargo or Countrywide that Wells Fargo's lien continued to be subordinated.  "Actual fraud, by definition, consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another--something said, done or omitted with the design of perpetrating what is known to be a cheat or deception."  *Moen*, 238 B.R. at 790 (citation omitted). "A 'false pretense' involves implied misrepresentation or conduct intended to create and foster a false impression." *Id.* at 791 (citation omitted).  It is well-established that mere silence of a material fact can constitute a false representation and is actionable under section 523(a)(2)(A).  *Van Horne*, 823 F.2d at 1288 (8th Cir.1987).  The definition of a misrepresentation includes "not only words spoken or written but also any other conduct that amounts to an assertion not in accordance with the truth." *Moen* at 791 (citation omitted).

    The misrepresentations were made by the Baxters knowingly.  Their knowledge and experience must be considered when determining whether they had knowledge of

-8-

their false representation.  *Id.*  "A false representation made under circumstances where [the maker] should have known the falsity is one made with reckless disregard for the truth and this [satisfies] the knowledge requirement."  *Id.*

Mr. And Mrs. Baxter are both sophisticated parties who were capable of understanding their transactions.  In fact, Mrs. Baxter had been working in the real estate industry for several years.  As early as the February 2005 closing, the Baxters were aware that the Countrywide loan had not been fully repaid.  The purpose for the refinancing was to allow the Baxters to pay off the Countrywide loan and walk away with cash to use for Mrs. Baxter's business.  When the Baxters left the closing without cash in hand, it was evident that the transaction was not completed properly.

Even if they were not sophisticated, Mr. and Mrs Baxter both signed a Payoff Information Agreement at the closing which required them to state that they would terminate the line of credit with Countrywide and that they would be responsible for any shortage owed to Countrywide.  They also signed HUD-1 settlement statements indicating that only approximately $64,000 of the funds available from the Wells Fargo loan were advanced at closing.  The Baxters have tried to escape accountability for statements made in their Payoff Information Agreement and knowledge of the contents of the HUD-1 settlement statements based on claims that they either did not read the documents before signing them or they did not remember signing them.

Failure to pay attention to the documents does not provide the Baxters with a defense to their fraud.  The Baxters were the only ones with total knowledge of the status of the two loans.  It is basic that a refinancing involves the borrowing of money from one lender (Wells Fargo) to pay off an existing lender (Countrywide) and obtaining

-9-

the release of the existing lender's (Countrywide) lien. It would be entirely inconsistent with the purpose of the refinancing for the Baxters to continue to borrow more money from Countrywide after the loan closing, at which Countrywide was to be paid off.

Prior to the time when the Baxters made the $61,800 in post-closing draws on the Countrywide line of credit, they learned that the funds from Wells Fargo were not sufficient to pay off the Countrywide loan. The Baxters were aware of the amount of the shortage owed to Countrywide and, in fact, agreed to pay it. Yet Mrs. Baxter testified that when she saw statements from Countrywide showing that: (1) the account was open; (2) the balance owed to Countrywide matched the amount of the shortage from the refinancing; and (3) there was a significant amount of credit available from Countrywide, she did not realize that the Countrywide loan should have been closed. Her testimony lacks credibility.

Given the nature of the refinancing transaction, the Baxters knew that neither Wells Fargo nor Countrywide would be willing to extend credit to them without a senior lien. They also knew that Countrywide would not loan them additional funds if it knew that its line of credit was supposed to be closed. Accordingly, they were aware that drawing down on the Countrywide line of credit was improper.

A determination of fraudulent intent by a debtor does not require a finding of malevolence or personal ill will. *Cutcliff v. Reuter (In re Reuter),* 427 B.R. 727, 753 (Bankr. W.D. Mo. 2010)(citations omitted). The court only needs to find that the debtor intended to induce the creditor to rely and act on the misrepresentation. *Id. A* creditor may introduce circumstantial evidence to infer a fraudulent intent. *Universal Bank, N.A. v. Grause (In re Grause),* 245 B.R. 95, 99 (B.A.P. 8th Cir.2000).

-10-

The Baxters possessed the requisite intent to deceive when they took the draws from Countrywide.  When Mrs. Baxter learned about the errors in the original payoff calculation and application of the Wells Fargo loans, she called the parties involved and hired a private lawyer to try to rectify the situation.  In contrast, when she received the statements from Countrywide showing that credit was still available, she instructed Mr. Baxter to call Countrywide to confirm that the credit was available, but she did not advise Countrywide that Wells Fargo was supposed to have a first lien.  Mr. Baxter also took no action to try to correct the mistake.  Rather, he confirmed the availability of credit by calling Countrywide.  He did not mention to the Countrywide representative that there had been errors at the February 2005 closing or that the line of credit should have been closed because of the Wells Fargo advance.  Neither of the Baxters informed Countrywide that the shortage that they agreed to pay remained outstanding.

The Baxters suggest that they lacked the intent to deceive necessary for a finding of fraud because they thought that they could repay the amounts borrowed from Countrywide and, in fact, they made some payments to Countrywide and intended to pay the balance owed.  Their intent to repay the loan is irrelevant to the fraud at issue here.  *See R & R Ready Mix v. Freier (In re Freier)*, 604 F3d 583, 588 (8th Cir. 2010)(even though debtor made payments to reduce debt, fraud existed where it was not dependent on representation of intent to make payment) *Moen*, 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999)(*quoting Rainier Title Co, Inc. v. Demarest (In re Demarest)*, 176 B.R. 917, 920 (Bankr. W.D. Wash. 1995), *aff'd* 124 F.3d 211 (9th Cir. 1997)("The intent issue . . . resolves around the procurement of the funds, not the intent to repay or not to repay.")).  The fraud by the Baxter took place when they wrote checks from the

-11-

Countrywide line of credit with knowledge that they were not supposed to do so, not when they failed to repay the funds that they borrowed.

At trial, Old Republic relied on the Eighth Circuit Bankruptcy Appellate Panel's *Moen* decision as support for its position. 238 B.R. 785. The showing of a misrepresentation made with knowledge and intent to deceive in this case is similar to that shown in *Moen*. In *Moen*, after the debtor's and his wife's secured lender refused to increase the limit on their line of credit, the debtor obtained a loan from a second bank. *Id.* at 789. The second lender paid the balance due to the first lender, causing the first lender to release its lien. *Id.* Then, the first lender erroneously sent the debtor a statement showing that credit remained available to him. *Id.* The debtor thought the statement was sent in error since he understood that the line of credit was to terminate when the lien was released. *Id.* Rather than pointing out the error, the debtor called the bank to confirm that the funds were still available. *Id.* He then wrote checks on the line of credit account. *Id.* The debtor continued to make payments to the bank, but he did not pay the full amount of the indebtedness. *Id.*

The bankruptcy appellate panel affirmed the bankruptcy court's decision to enter judgment in favor of the first bank under section 523(a)(2)(A). *Id.* at 796. On appeal, the debtor challenged the bankruptcy court's findings that he made a misrepresentation, that he had knew his representations were false and that he possessed the requisite intent to deceive. *Id.* at 790. The bankruptcy appellate panel agreed with the bankruptcy court's determination that the debtor "knew exactly what he was doing and that his conduct amounted to fraud." *Id.* at 794. It also agreed with the bankruptcy court's decision that the debtor's payments on the account did not negate a finding of

-12-

intent to deceive.  *Id.* at 791.

Like the debtor in *Moen*, the Baxters took advantage of a situation they knew the facts of by drawing funds from a line of credit that they knew should have been closed, with the purpose and intent to obtain funds to which they would not otherwise have access.  Also like in *Moen*, it is irrelevant whether the Baxters intended to repay the funds that they improperly withdrew from the account.  The fraud was based on their unauthorized draws, not on their intent to repay the sums borrowed.[3]

Justifiable reliance is a minimal standard that is a lower than reasonable reliance. *Treadwell v. Glenstone Lodge, Inc. (In re Treadwell),* 423 B.R. 309, 314 (B.A.P. 8th Cir. 2010)(*citing Field*, 516 U.S. 59).  Even when an investigation would have revealed the falsity of the representation, reliance may be justifiable.  *Freier*, 604 F3d at 588 (*citing Field,* 516 U.S. at 74-75).  "[A] creditor 'cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'"  *Id.*, at 588 (*citing Field,* 516 U.S. at 71)(*quoting* RESTATEMENT (SECOND) OF TORTS § 541 cmt. a (1976)).  "The rationale for placing [a] relatively low burden on the victim of the misrepresentation is rooted in the common law rule that the victim's contributory negligence is not a defense to an intentional tort."  *Treadwell*, 423 B.R. at 316 (citation omitted).  Under the minimal

---

[3]  The Baxters attempted to distinguish *Moen* based on the fact that in *Moen* the debtor's line of credit with the first bank had been paid in full and the debtor was surprised to learn that credit remained available.  They claim that this case is different because the Baxters knew that Countrywide's loan was not paid off, so they were not surprised to learn that credit was still available.  The Baxters make a distinction without a difference.  Regardless of whether the Baxters knew that the line of credit was still open, they were aware that it was supposed to be closed and that they were not authorized to make additional draws on it.

standard for establishing justifiable reliance, Countrywide's reliance on the Baxters'
representations that they were entitled to make draws on the line of credit was
justifiable.

Likewise, the fraud by the Baxters was the cause of damages in the amount of
$46,800 ($61,800 less $15,000).  The parties stipulated that "[t]he Baxters wrote 8
checks drawing down on the [Countrywide] home equity loan from March 13, 2006
through May 12, 2006 totaling $61,800.00."  They also agreed that "[t]he Baxters made
payments on the Countrywide line of credit from February, 2005 through February, 2007
in excess of $15,000.00."  Without evidence to show the exact amount of the
repayments that the Baxters made to Countrywide, this Court cannot give them credit
for more than the $15,000 amount of repayment to which the parties agreed.
Accordingly, the Baxters obtained $46,800 by fraud.

## CONCLUSION

For the foregoing reasons, this Court finds that Old Republic made a cause of
action against each of the Baxters under Bankruptcy Code Section 523(a)(2)(A).  Old
Republic holds a claim for a non-dischargeable debt against the Baxters in the amount
of $46,800.


DATED:  August 31, 2010

St. Louis, Missouri

cke

_____
Barry S. Schermer
Chief United States Bankruptcy Judge

-14-

Copies To:

Ellen W. Dunne
Blitz, Bardgett & Deutsch, L.C.
120 S. Central Avenue, Suite 1650
St. Louis, MO 63105
ATTORNEY FOR PLAINTIFFS

Deanna Angeli Foley
2531 Hampton Ave.
St. Louis, MO 63139
ATTORNEY FOR DEFENDANTS BAXTER

Clare S. Baxter
4104 W. Pine Blvd.
Saint Louis, MO 63108
DEFENDANT/DEBTOR

Richard P. Baxter
4104 W. Pine Blvd.
Saint Louis, MO 63108
DEFENDANT/DEBTOR

Jennifer M. West
South & Associates, P.C.
800 Market Street
Suite 1660
St. Louis, MO 63101

United States Trustee
U.S. Courthouse
111 S. 10th St., #6353
St. Louis, MO 63102